## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BRIAN LANCE BRANTNER,**

       **Plaintiff,**

**v.**                                       **Civil Action No. 1:16cv223**
                                                  **(Judge Keeley)**

**NORTH CENTRAL REGIONAL JAIL;**
**DR. HUFFMAN; NURSE STAFF;**
**CORRECTIONAL OFFICERS STAFF,**
**and ADMINISTRATOR AT NCRJ,**

       **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On November 21, 2016, the *pro se* Plaintiff, an inmate incarcerated at Huttonsville Correctional Center ("HCC") in Huttonsville, West Virginia, initiated this case by filing a civil rights complaint against the above-named defendants pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to serious medical needs and medical negligence, arising out of an August 10, 2016 fall occurred while he was incarcerated at the North Central Regional Jail ("NCRJ"). ECF No. 1. Plaintiff also filed a Motion for Leave to Proceed *in Forma Pauperis* ("IFP") with supporting documents. ECF Nos. 2, 3, & 4. By Order entered on September 22, 2014, Plaintiff's IFP motion was granted, and he was directed to pay an initial partial filing fee ("IPFF"). ECF No. 6. On December 5, 2016, he paid the IPFF. ECF No. 9.

On March 2, 2017, Magistrate Judge James E. Seibert conducted a preliminary review of the complaint; determined that summary dismissal was not appropriate, and entered an Order to Answer. ECF No. 10.  In that Order, because Plaintiff had attempted to name unknown "nurse staff" and "correctional officers" as defendants, Plaintiff was given an addition thirty days in which to identify these John/Jane Doe defendants.  Id. Summonses were issued for each named defendant. Id.  On

March 24, 2017, Plaintiff filed a combined motion for an extension of time in which to identify the John and Jane Doe defendants; a motion for leave to file discovery; and a motion for appointed counsel. ECF No. 17.  On April 3, 2017, the Defendant NCRJ and the Administrator of the NCRJ filed a Motion to Dismiss with a memorandum in support.  ECF Nos. 18 & 19.  The same day, Defendant Dr. Andrea Huffman filed a Motion to Dismiss and Alternative Motion for Summary Judgment with a memorandum in support, attaching certain excerpts from Plaintiff's medical records.  ECF No. 20.

By Order entered April 5, 2017, Plaintiff's motion for an extension of time in which to identify the John and Jane Doe defendants was granted, his motion for discovery was denied without prejudice as premature; and his motion for appointed counsel was denied. ECF No. 21.  By separate Order, the Clerk was directed to seal the medical records produced by Defendant Huffman. ECF No. 22.  Because Plaintiff is proceeding *pro se*, the Court issued a <u>Roseboro</u> Notice on April 5, 2017. ECF No. 23.  On April 11, 2017, Plaintiff filed a response in opposition to Defendants NCRJ and its Administrator, styled as "Answer to Motion to Dismiss and Memorandum of Law in Support Thereof." ECF No. 27. On April 14, 2017, Plaintiff filed another response in opposition, this one directed at Defendant Huffman and likewise styled as "Answer to Motion to Dismiss and Memorandum of Law in Support Thereof." ECF No. 28. On April 24, 2017, Defendants NCRJ and Administrator of NCRJ filed a reply memorandum, attaching as an exhibit a copy of an April 12, 2017 pleading from Plaintiff, titled "Response to Motion to Dismiss on Behalf of Defendants North Central Regional Jail and Administrator at North Central Regional Jail."[1]  ECF No. 29; <u>see also</u> ECF No. 29 at 7 - 11. On May 1, 2017, Defendant Dr. Huffman filed a reply memorandum.  ECF No. 30. By Order entered January 17, 2018, the Clerk was directed to docket Plaintiff's April 12, 2017 "Response to Motion to Dismiss on Behalf of Defendants North Central Regional Jail and

---

[1] There is no certificate of service attached to this pleading and a review of the docket, together with request by the *pro se* law clerk to the Clerk to search the case's paper file, reveals that a copy of this response was never independently filed by the Plaintiff with the Court.

Administrator at North Central Regional Jail" separately, to clarify the docket. ECF No. 32. Thereafter, the Plaintiff's "Response to Motion to Dismiss on Behalf of Defendants North Central Regional Jail and Administrator at North Central Regional Jail" was docketed separately as ECF No. 33.

Accordingly, this matter is now ripe for a report and recommendation pursuant to LR PL P 2.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the Plaintiff raises medical malpractice and deliberate indifference to serious medical needs claims against the Defendants, arising out of an incident that occurred on August 10, 2016 when he fell down the stairs at the NCRJ. ECF No. 1 at 7 – 9. Plaintiff contends he hit his head, was knocked unconscious for "30 or more seconds," but was never assessed for a concussion or head trauma; hurt his neck, back, hip, leg and knee [id. at 9], but was made to get up and walk anyway, before any x-rays were taken to ensure he had not suffered a serious injury, and he was never taken to an outside hospital for evaluation. Id. He also contends that the correctional officers picked him up roughly, causing undue pain [id. at 9]; and the nurse in charge failed to direct that a neck brace or backboard be used when moving him. Id. at 7.

Plaintiff appears to maintain that he has exhausted his administrative remedies with regard to these claims. Id. at 5.  Attached to his complaint are an undated hand-written letter from him to the West Virginia Regional Jail Authority ("WVRJA") and the NCRJ [ECF No. 1-1 at 1]; a September 15, 2016 hand-written letter from him to the NCRJ administrator [id. at 2]; an undated handwritten letter from him to the WVRJA and the NCRJ [id. at 3]; an August 25, 2016 hand-written letter from him addressed to "to whom it may concern" [id. at 4]; an October 14, 2016 hand-written, notarized letter from him to "Administrator" [id. at 5]; an October 28, 2016 hand-written letter addressed to "Administration" [id. at 6]; a November 1, 2016 hand-written letter from him to the Administrator of

the NCRJ. Id. at 7 – 8. All of the letters are on lined paper; they outline his claims, complaints, and related issues, and generally indicate his intent to file suit. His final attached letter, addressed to "Administrator," argues that because he was moved and made to stand before being assessed after the injury, if his injuries had been more severe "the result . . . would have been possible . . . [paralyzation], further injury to hip and leg, blood clot in head, broken neck, and even Death [sic]." ECF No. 1-1 at 8.

Plaintiff contends his injuries were that "when CO's [sic] picked me up I feel [I] injured my hip even more as well as my back. My knee was twisted the way I was picked up and my neck was twisted as well." Id. at 10.

As relief, Plaintiff seeks Twenty-Five Million Dollars ($25,000,000.00) for himself; Five Million ($5,000,000.00) for each of his three children, and an additional Ten Million Dollars ($10,000,000.00) for himself for pain and undue stress. Id.

**B. Defendants NCRJ and Administrator of NCRJ's Motion to Dismiss**

Defendants NCRJ and its Administrator contend that Plaintiff's complaint should be dismissed because 1) it is barred by their immunity under the Eleventh Amendment; 2) Plaintiff cannot state a claim against them under § 1983 because he has not stated a violation of his constitutional rights; and 3) because Plaintiff has failed to exhaust his administrative remedies. ECF No. 18.

**C. Defendant Dr. Andrea Huffman's Motion to Dismiss and Alternative Motion for Summary Judgment**

Dr. Huffman ("Huffman") argues that the complaint should be dismissed or summary judgement granted in her favor because 1) Plaintiff has failed to comply with the Notice of Claim and Screening Certificate of Merit requirements of the West Virginia Medical Professional Liability Act ("MPLA") and 2) Plaintiff's claims do not meet the legal threshold for a viable claim under either the Eighth or Fourteenth Amendment of the United States Constitution. ECF No. 20 at 1 – 2. In support

4

of her arguments, she attaches two pages of Plaintiff's medical records.  ECF No. 20-2 and ECF No.

20-3.

**D. Plaintiff's Response to Defendants NCRJ and Administrator of NCRJ's Motion to Dismiss, styled as "Answer to Motion to Dismiss and Memorandum of Law in Support Thereof"**

In an unsigned response that appears to be a partial draft (of the same document also filed as

"Answer to Motion to Dismiss and Memorandum of Law in Support Thereof" to Defendant Huffman

and docketed there as ECF No. 28, perhaps filed by Plaintiff in error)[2] Plaintiff reiterates the factual

details of his claims and attempts to refute *Defendant Huffman's* arguments on the same. ECF No.

27. As his response to "Issue 1," he argues that he has stated a cognizable claim under Rule 12(b) and

Rule 56.  Id. at 1.  He contends that he has a "permanent hip injury that is debilitating and disabling."

Id. Further, he contends that regarding the Defendant's allegation of lack of proper MPLA notice, the

administrative grievances he filed in August and November 2016 should be sufficient notice to serve

as a warning of the impending suit. Id. He challenges factual errors and inaccuracies in the medical

records attached to Dr. Huffman's memorandum in support of her dispositive motion, arguing that

these inaccuracies will be disproven by discovery.  Id. at 1 – 4.  He provides no rebuttal to any the

arguments made in Defendants NCRJ and its Administrator's motion to dismiss, nor does he attempt

to refute their allegations regarding his failure to administratively exhaust his claims.

**E. Plaintiff's "Response to Motion to Dismiss on Behalf of Defendants North Central Regional Jail and Administrator at North Central Regional Jail"[3]**

In this response in opposition, Plaintiff reiterates his arguments and attempts to refute the

Defendants' on the same. In opposition to the Defendants' Eleventh Amendment immunity

---

[2] See the January 17, 2018 Order Directing Clerk and Clarifying Docket, ECF No. 32 for an explanation of this issue.

[3] As noted in the January 17, 2018 Order Directing Clerk and Clarifying Docket [ECF No. 32], although this pleading was originally filed as an exhibit to Defendants NCRJ and NCRJ Administrator's reply, in order to clarify the docket it has since been docketed separately as ECF No. 33, and will hereinafter be referred to by that new ECF number.

argument, he contends that he is suing the Administrator of the NCRJ in his individual capacity. ECF No. 33 at 7 – 8.  He contends that he has stated a claim under § 1983, and that he will be able to prove his claims through discovery. Id. at 8 – 9. Finally, he argues that he filed such remedies as were available to him at the NCRJ.  Id. at 9.

**F. Plaintiff's Response to Defendant Dr. Andrea Huffman's Motion to Dismiss and Alternative Motion for Summary Judgment, styled as "Answer to Motion to Dismiss and Memorandum of Law in Support Thereof"**

The first three and one quarter pages of Plaintiff's response are identical in every respect to Plaintiff's purported response to Defendants NCRJ and Administrator of NCRJ's Motion to Dismiss; thereafter, Plaintiff adds a page and a half of argument regarding motions to dismiss, then contends that he has stated "sufficient facts to survive a Motion to Dismiss[.]"  ECF No. 28 at 4 – 5. Finally, he argues that "[r]egardless of the lack of evidence of paralysis or other permanent injury beyond the hip disability the plaintiff claims that the negligence and deliberate indifference of the defendant is a continuing problem for the inmates under the care of the defendant and to the State[.]" Id. at 5.

**F. Defendants NCRJ and Administrator of NCRJ's Reply**

Defendants NCRJ and Administrator's reply first notes that Plaintiff has filed "multiple responsive pleadings" and that Plaintiff's "Answer to Motion to Dismiss and Memorandum of Law in Support Thereof" "deals with the subject matter of Defendants North Central Regional Jail and Administrator at North Central Regional Jail's   Motion to Dismiss [sic]." See ECF No. 29 at 1. Next, they contend that in Plaintiff's response to Defendant Huffman's dispositive motion, the "first three pages of the [Plaintiff's] brief addressed Defendants North Central Regional Jail and Administrator at North Central Regional Jail [sic], while the remainder of brief was directed toward Defendant Dr. Huffman's Motion to Dismiss." Id. at 1 -2.  Further, they state that "Plaintiff served a Response to Motion to Dismiss on Behalf of Defendants North Central Regional Jail and Administrator at North

Central Regional Jail via regular US mail on April 17, 2017" and note that it is attached to their reply. Id. at 2.

Defendants note that Plaintiff's response in opposition [now docketed as ECF No. 33] makes contradictory arguments regarding the NCRJ Administrator's "personal[] . . . decision not to send [him] to an outside" hospital, while also admitting that the Administrator "may or may not be a valid subject of this lawsuit," because as a *pro se* filer, Plaintiff was "not sure." See ECF No. 29 at 2. They argue that because Plaintiff has not proven any personal involvement by the Administrator, nor any causal connection to his alleged injuries, Plaintiff has not stated a cognizable claim against the Administrator, because *respondeat superior* cannot form the basis of a § 1983 claim. Id. at 2 – 3. Next, Defendants note that Plaintiff has not stated a cognizable claim of deliberate indifference on the part of the Defendants because any alleged failure by the Administrator to act did not result in any potentially serious injury to Plaintiff.  Id. at 3 – 4. Finally, they reiterate their argument that Plaintiff failed to exhaust his administrative remedies. Id. at 4 – 5.

## G. **Defendant Dr. Andrea Huffman's Reply**

Defendant Huffman reiterates her request for the complaint to be dismissed or summary judgment entered in her favor, contending that in Plaintiff's response in opposition, Plaintiff "has completely changed the factual allegations of his Complaint and . . . [now] argue][s] that the medical records submitted in support of Dr. Huffman's Motion for Summary Judgment were fabricated." ECF No. 30 at 1. She further notes that Plaintiff now claims for the first time that he has a permanent, debilitating and disabling hip injury that was caused by Defendants' negligence and deliberate indifference, arguing that it is incredible that Plaintiff's complaint would seek damages of Forty Million Dollars while omitting any reference to an actual injury. Id. at 2.  Further, she argues, assuming *arguendo* that Plaintiff does have an actual debilitating, disabling permanent hip injury, he still cannot prove deliberate indifference, given that he was examined, treated, and received x-rays

the day he was injured.  Id.  Finally, she notes that Plaintiff's *pro se* status does not excuse him from the MPLA's requirement of a Screening Certificate of Merit.  Id.

### III. Standard of Review

#### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs, 882 F.2d 870 (4th Cir. 1989).  Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct.1955, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id.; see also Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. See Fed.R.Civ. P 8 (providing general rules of pleading), Fed.R.Civ. P. 9 (providing rules for pleading special matters), Fed.R.Civ. P. 10

(specifying pleading form), Fed.R.Civ. P. 11 (requiring the signing of a pleading and stating its significance), and Fed.R.Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.) Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009).

Brantner is representing himself, which requires the Court to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251(1976); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

**B. Motion for Summary Judgment**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586. The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  Id. This means that the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.' Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587.

## IV. Analysis

### A.  Defendant North Central Regional Jail

42 U.S.C. §1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982)

In the instant case, the Plaintiff names the NCRJ as a defendant. The NCRJ is not a proper defendant because it is not a person subject to suit under 42 U.S.C. § 1983. See Preval v. Reno, 203 F.3d 821 (4th Cir. 2000) (unpublished) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amendable to suit under 42 U.S.C. § 1983); and Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."); Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989) (Neither a state nor its officials acting in their official capacities are "persons" under 42 U.S.C. Accordingly, the NCRJ must be dismissed from this action.

**B. Administrator of the NCRJ**

In his complaint, Plaintiff names the Administrator of the NCRJ in his capacity as the Administrator of the NCRJ. However, Plaintiff's complaint makes no allegation that the Administrator was personally involved in the violation of his constitutional rights. Instead, Plaintiff appears to name him only in his official capacity.  The only mention of the Administrator's involvement stated in the complaint is Plaintiff's statement in § II "[p]arties," where he names the Administrator, stating "[h]e runs NCRJ." ECF No. 1 at 3.  Other than Plaintiff's subsequent statement that the Administrator did not respond to his grievances [id. at 5], the Administrator is not

mentioned again in the body of the complaint. In his response to the NCRJ's motion to dismiss, Plaintiff attempts to argue that he is

> suing the PERSON - the Administrator of NCRJ in his capacity as Administrator because he knew, or should have known that his employees and contractors were not following proper RJA procedure in handling of medical incidents . . .[and that] the . . . Administrator is the person who has to decide if an inmate is sent to an outside medical facility or not . . . [and he] personally made the decision not to send the Plaintiff . . . without medical knowledge or skill to be able to make that decision on anything more than decide on a cost basis or even malice in his hatred toward those under his care.

ECF No. 33 at 8 (emphasis added).  Despite Plaintiff's attempt to argue otherwise, the undersigned construes this as a claim against the Administrator in his official capacity, as Plaintiff has so clearly stated.

There is no *respondeat superior* liability under § 1983. See <u>Monnell v. Department of Social Services</u>, 436 U.S. 658 (1978); <u>see also</u> <u>Vinnedge v. Gibbs</u>, 550 F.2d 926, 928 (4th  Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." <u>Vinnedge</u>, *supra*. Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. <u>Fisher v. Washington Metropolitan Area Transit Authority</u>, 690 F.2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the

supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994).[4]

Because Plaintiff fails to allege any personal involvement on the part of Defendant NCRJ Administrator[5] and does not make any allegations which reveal the presence of the required elements for supervisory liability, Plaintiff fails to state a claim against the NCRJ Administrator, and he should be dismissed as a defendant in this action.

## C. Failure to Exhaust Under § 1997e

Under the Prison Litigation Reform Act of 1995 (PLRA), as amended, prisoners must exhaust the grievance procedure in the institution where they are incarcerated prior to filing suit in federal court challenging prison conditions. 42 U.S.C.A. § 1997e(a). In Jones v. Bock, the United States Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints," nor do they have the burden of proving it. 549 U.S. 199, 216 (2007); see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).[6]  Further, the Court has held that "proper exhaustion" is required, meaning that the inmate must follow the prison's administrative rules as required, including when and how to file the complaint. See Woodford v. Ngo, 548 U.S. 81 (2006).

Section 1997e(a) provides that prisoners are required to exhaust "such administrative remedies as are available," and courts have consistently held that "administrative remedy is not

---

[4] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." See Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

[5] To the extent that the plaintiff may be asserting that Defendant NCRJ Administrator was deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit because that is not the type of personal involvement required to state a claim. See Paige v. Kuprec, 2003 W.L. 23274357 *1 (D. Md. March 31, 2003).

[6] A district court may also raise the affirmative defense of exhaustion *sua sponte*, so long as the Plaintiff is given an opportunity to respond. See Anderson v. XYZ Corr. Health Svcs., Inc., 407 F.3d 674 (4th Cir. 2005).

considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." <u>Moore</u>, 517 F.3d at 725. An inmate must exhaust available remedies, but need not exhaust unavailable ones." <u>Ross v. Blake</u>, 136 S. Ct. 1850, 1858 (2016).  For example, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use, such as when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.  <u>Ross</u>, 136 S. Ct. at 1859. Or, a remedy might be rendered unavailable because prison administrators thwart inmates from taking advantage of it "through machination, misrepresentation, or intimidation." <u>Ross</u>, 136 S. Ct. at 1860. Further, courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." <u>Aquilar-Allevaleda v. Terrell</u>, 478 F.3d 1223, 1225 (10th Cir. 2007); <u>see also</u> <u>Kaba v. Stepp</u>, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials fail to provide inmates with the forms necessary to file an administrative grievance, administrative remedies are not 'available.'") (citations omitted); <u>Brown v. Croak</u>, 312 F.3d 109, 111-12 (3rd Cir. 2002), (holding that administrative remedies were unavailable where the prison officials erroneously told the prisoner that he must wait until the investigation was complete before filing a grievance).

Finally, where exhaustion is not apparent from an inmate's pleading, "a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." <u>Custis v. Davis</u>, 2017 U.S. App. LEXIS 5147 (4th Cir. 2017)(*quoting* <u>Moore v. Bennette</u>, 517 F.3d at 725.

The West Virginia Jail and Correctional Facility Authority's *Handbook of Inmate Rules and Procedures*[7] sets forth the following five-step process for grievances:

> A) If an inmate wishes to use the grievance procedure, jail personnel will provide the inmate with an inmate grievance form.

---

[7] *Available at:* < http://apps.sos.wv.gov/adlaw/csr/readfile.aspx?DocId=18978&Format=PDF >

B) The inmate shall complete the form, addressed to the Administrator; the form, as completed by the inmate, shall be transmitted to the Administrator's office by jail personnel without being read or altered and within a reasonable time, not later than the end of the shift.

C) The Administrator upon receipt of the grievance may reject the grievance if it appears on its face to have been filed in bad faith.

D) The Administrator, if the grievance is not rejected pursuant to Paragraph 3, shall provide the inmate an opportunity to be heard before a decision is made on the grievance. The Administrator may assign a staff member to investigate the complaint and report written findings within forty-eight hours and shall inform the inmate of such action.

E) The Administrator shall provide a written decision with regard to the grievance to the grieving inmate within twenty- four (24) hours of the receipt of the investigation report. Such written decision shall include a statement of the action taken concerning the grievance, the reasons for such action, and procedures for appeal of the decision.

Further, if an inmate is dissatisfied with the Administrator's decision, he must file an appeal to the Executive Director within five days of the receipt of the Administrator's decision, and must include a copy of the initial complaint and the Administrator's decision.

Although the burden is not on Plaintiff to plead exhaustion, the § 1983 form complaint of this Court that is given to inmates asks if the inmate followed the grievance procedure, and to attach grievances and responses. Plaintiff stated in his complaint that he did file grievances related to the incident: a Level 1 grievance with "Administrator;" a Level 2 grievance with "both Administrator and State;" and a Level 3 grievance with "both State and Administrator." ECF No. 1 at 5. He attaches a number of hand-written letters to his complaint. At least two of them specifically claim to be "grievance letters." See ECF No. 1-1 at 5 & 6. None of them are copies of WVRJ's standard grievance triplicate forms.

Defendants NCRJ and NCRJ contend that Plaintiff has not exhausted his administrative remedies, because one of the "grievances" Plaintiff attached to his complaint, a November 1, 2016 letter addressed to "Administrator," states that he filed several grievances in the past few months

"with your office and the office in Charleston," but got no response. See ECF No. 1-1 at 7; see also ECF No. 19 at 10. Therefore, they contend that because Plaintiff failed to consider the absence of a response as a denial and proceed to the next level does not excuse his failure to exhaust.  ECF No. 19 at 10.

In response, Plaintiff contends that the jail officials have basically frustrated his attempts to file grievances, and have failed to follow their own procedural rules. Specifically, he contends that the grievances he filed at the NCRJ were filed

> through the Kiosk system which only has the one step and there [are] no other means to appeal the grievance. Those filed from NRJ were filed on paper but there was no reply to any of the grievances. (Two grievances (The first the same as the one filed originally to NCRJ Administrator because Plaintiff could not get a copy of the original grievance and a second was sent to the Administrator and to RJA)[8] and two follow up grievances on not answer the grievances.) Plaintiff has not received an[] answer to any of the grievance[s] filed.  The grievance process, for the jail at least, is broken and there is no other recourse for the plaintiff to take . . .

ECF No. 33 at 9.

In support of their burden, Defendants NCRJ and NCRJ Administrator's reply now contends that Plaintiff did not follow the proper grievance procedure because Plaintiff avers that he filed grievances on August 28, 2016 while at NCRJ, and two more while at Northern Regional Jail ("NRJ") but that instead, attached to Plaintiff's complaint, are grievances and general correspondence with the Administrator of NCRJ bearing the following dates: August 25, 2016; September 15, 2016; October 14, 2016; October 28, 2016; and November 1, 2016 [ECF No. 29 at 4] which were not submitted on the prison's Kiosk system as Plaintiff's response brief contends. Id. Further, they argue, Plaintiff contends that the grievance filed at NCRJ was filed through the Kiosk system but that no response was received. Id. They argue that Plaintiff's remaining grievances filed at NRJ were filed there on paper, but were directed to the NCRJ Administrator. Id. Defendants contend that the NCRJ uses a Kiosk system to report grievances. Moreover, they argue, according to

---

[8] The undersigned presumes that by "RJA" Plaintiff is referring to the West Virginia Regional Jail Authority.

the WVRJA's records,[9] while the Plaintiff has filed numerous inquiries, he never filed an actual grievance while at NCRJ. They note that Plaintiff admits that his grievances were handwritten after he arrived at NRJ; however, they note that the NRJ also requires use of the Kiosk to file grievances. Therefore, they conclude that none of the correspondence attached to Plaintiff's complaint satisfies Plaintiff's obligation to exhaust all administrative remedies available to him, because they were not filed pursuant to the WVRJ's rules and administrative system. Therefore, Plaintiff failed to exhaust his administrative remedies and the case should be dismissed.

The undersigned notes that the Defendants NCRJ and NCRJ Administrator's argument fails to address the Plaintiff's allegations regarding the limitations of the WVRJ's new Kiosk system, his confusion over which Plaintiff alleges stymied his attempts to exhaust. Accordingly, the undersigned finds the complaint sets forth sufficient allegations that are plausible on their face to survive a motion to dismiss with regard to exhaustion. Accepting Plaintiff's factual allegations as true, as required, while the documents Plaintiff attached to his complaint as proof of exhaustion are indeed only hand-written letters, instead of grievances filed on the WVRJ's triplicate grievance forms, because Plaintiff argues that he was prevented from following the required procedure by the Kiosk system's limitations, including its failure to provide a copy of grievances filed through it, the undersigned concludes that it appears Plaintiff may have followed the grievance procedure insofar as the institution allowed him. Accordingly, Plaintiff's claims will be considered on their merits. Nonetheless, the complaint is due to be dismissed anyway, for the reasons stated below.

**D. Deliberate Indifference to Serious Medical Needs**

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual

---

[9] The undersigned notes that while Defendants could have produced a summary report from the WVRJ of Plaintiff's grievances, to clarify this record, they have not done so.

punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention.   Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).[10]

---

[10] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W.Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. Harrison v. Barkley, 219 F.3d 132, 137 (2nd Cir. 2000). A prisoner's unresolved dental condition, which caused him great pain, difficulty in eating, and deterioration of the health of his other teeth, was held to be sufficiently serious to meet the Estelle standard. Chance v. Armstrong, 143 F.3d 698, 702 - 703 (2nd Cir. 1998).   A degenerative hip condition that caused a prisoner "great pain over an extended period of time and . . . difficulty walking" is a serious condition. Hathaway v. Coughlin, 37 F.3d 63, 67 (2nd Cir. 1994). Under the proper circumstances, a ventral hernia might be recognized as serious. Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978). A ten-month delay in providing prescribed medical shoes to treat severe and degenerative foot pain causing difficulty walking in a serious medical need. Giambalvo v. Sommer, 2012 WL 4471532 at *5 (S.D.N.Y. Sep. 19, 2012). Numerous courts have found objectively serious injury in cases involving injury to the hand, including broken bones. See, e.g., Lepper v. Nguyen, 368 F. App'x. 35, 39 (11th Cir. 2010); Andrews v. Hanks, 50 Fed. Appx. 766, 769 (7th Cir. 2002); Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998) Beaman v. Unger, 838 F.Supp. 2d 108, 110 (W.D. N.Y. 2011); Thompson v. Shutt, 2010 WL 4366107 at *4 (E.D. Cal. Oct. 27, 2010); Mantigal v. Cate, 2010 WL 3365735 at *6 (C.D. Cal. May 24, 2010) *report and recommendation adopted,* 2010 WL 3365383 (C.D. Cal. Aug. 24, 2010); Johnson v. Adams, 2010 WL 1407787 at *4 (E.D. Ark. Mar. 8, 2010) report and recommendation adopted, 2010 WL 1407790 (E.D. Ark. Mar. 31, 2010); Bragg v. Tyler, 2007 WL 2915098 at *5 (D.N.J. Oct. 4, 2007); Vining v. Department of Correction, 2013 U.S. Dist. LEXIS 136195 at *13 (S.D.N.Y. 2013)(chronic pain arising from serious hand injuries satisfies the objective prong of Eighth Amendment deliberate indifference analysis). A three-day delay in providing medical treatment for an inmate's broken hand was a serious medical need. Cokely v. Townley, 1991 U.S. App. LEXIS 1931 (4th Cir. 1991).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2nd Cir. 2003)).

Here, although Plaintiff's complaint clearly identifies his claims as arising under "medical malpractice" and never specifically alleges an Eighth Amendment violation, let alone deliberate indifference to a serious medical need, because Plaintiff is a *pro se* litigant to whom latitude should be given, the undersigned will construe Plaintiff's references to "civil rights" in the letters attached to

his complaint as stating an Eighth Amendment violation. <u>See</u> ECF No. 1-1 at 3 & 4.  However, even assuming that Plaintiff has a serious medical condition, he fails to state a viable Eighth Amendment claim, and his complaint as it relates to deliberate indifference should be dismissed for the reasons more fully discussed below.

**<u>Defendant Dr. Andrea Huffman</u>**

Plaintiff raises a number of medical malpractice claims against unknown "Nurse Staff" and "Correctional Officers Staff" in connection with his medical claims; however, as noted *infra*, none of these individuals have ever been identified or served, and thus any claims against them must fail.

The only remaining named "medical" defendant in this matter is Dr. Huffman. The allegations made against Defendant Huffman are that because Plaintiff hit his head in the fall and lost consciousness for "30 or more seconds," Huffman should have followed the "rule book for inmates [that] states any head tra[u]ma that could be . . . a blood clot" should be "sent out to the nearest medical facility to be examined by trained staff." ECF No. 1 at 9.

Further, Plaintiff alleges that he was "made to get up and move and walk" (presumably by Dr. Huffman) before any x-rays had been taken of his neck, back, hip, or legs, to make sure nothing was broke or no spinal injury had occurred.  <u>Id.</u>

Defendant Huffman argues that Plaintiff's claims do not contain factual allegations sufficient to support a claim against her for a deprivation of his constitutional rights, let alone allege any specific conduct that would meet the much lower threshold to support a medical malpractice claim. ECF No. 20-1 at 4. Moreover, she notes that Plaintiff's complaint alleges that her actions "could have" injured him, not that he *was* injured.  <u>Id.</u> Therefore, she argues that given the lack of assertion of actual injury together with Plaintiff's admission that he did receive treatment and x-rays, any constitutional claim of deliberate indifference must fail. <u>Id.</u>

20

The undersigned agrees. First, the undersigned notes that Plaintiff alleges that he fell on August 10, 2016; his attached September 15, 2016 letter dated states that the fall occurred "around the hours of 9:00 am and 11:00 a.m.  See ECF No. 1-1 at 2. Plaintiff's response in opposition to Huffman's dispositive motion, which attached two excerpts from his medical records, now argues that the records are untrue and that "the "nurse . . . changed the report" to say that he had fallen and rolled down the stairs, rather than that he had fallen, hit his head, and been rendered unconscious. See ECF No. 28 at 3. Plaintiff contends that further proof of the falsity of the records is that the incident took place in the morning and the time noted in the nurse's note is "19:11 which is 7:11 PM." Id.

The August 10, 2016 nurses' note from Plaintiff's NCRJ medical record, provided by Huffman states:

Date: 08/10/2016       Author: LPN, Isner, Dustyn
**19:11**

**late entry 1004**

Medical assistance called in F8 tower officer reported that pt had fallen down stairs. **This nurse took C Collar and back board to section[.]** It was reported that he had not fallen down stairs that he fell and then rolled to bottom and **only needed wheelchair because he was c/o leg pain.**

**Treatment was already being rendered pt was assisted on stretcher and taken to medical**[;] once in medical this nurse took over care. He c/o no numbness or pain to lower extremities states he feels like he has a scrape to back of head no Injuries noted. PERRL tracks light and obeys commands grips strong and equal. VSS 132/78 18 66 98% 98.2[.] **Spoke with Dr. Huffman and was advised to leave on stretcher until he could be seen by her not to move him again to place c collar on pt was secured to stretcher already and was educated by this nurse not to move until seen. HE [sic] stated he was fine[,] just had a scrape to head that he did not injure his neck or back and wanted a drink of water.**

1130 Pt remains stable free of any further complaint[;] cap refill less than 3[;] skin warm and dry[;] PERRL[;] grips strong and equal 132/78 18 77 98%[.] Evaluated by provider and x rays ordered[.]

ECF No. 20-2 (emphasis added).  First, the undersigned notes that the nurse's note clearly states that it is a "late entry" made at "17:11" for 10:04 a.m.; thus, it is clear that there was no attempt to fabricate the record by altering the time the incident occurred.

Next, the note clearly states that although the nurse took a "C collar" (cervical collar) and a backboard to the scene, by the time she arrived with it, "treatment was already being rendered" and the Plaintiff was assisted onto a stretcher.

After Plaintiff had already been moved to a gurney and brought to medical to be examined, once Dr. Huffman was contacted, Huffman directed that Plaintiff be left on the stretcher; not be moved again; and that a cervical collar should be applied; the nurse documented that this was done.

It is apparent that Plaintiff had already been in medical and had been examined by the time the nurse re-checked him at "1130," i.e., 11:30 a.m. which is consistent with the time Plaintiff reported that he was injured.

Further, Plaintiff's allegation against the "nurse in charge," that he was moved without use of a cervical collar or backboard ignores the fact that the nurse's note documents having gone to the scene with a cervical collar and backboard, but that by the time he/she arrived, Plaintiff had already been assisted to the gurney; moreover, again, this nurse has not been named in this suit.

Likewise, a careful read of the nurse's note indicates that by the time Dr. Huffman was notified of the situation, Plaintiff had *already been moved*, because the nurse charted that he/she had spoken with Dr. Huffman" who directed him/her to leave Plaintiff on the gurney until Huffman could get there, not to move him again, and to apply a cervical collar. ECF No. 20-2. Accordingly, this allegation against Huffman must fail.

As for Plaintiff's allegation that he was made to walk to the bathroom on an injured hip and that (presumably) even though there was a wheelchair available, it was refused to him [ECF No. 1 at 8]; the nurse's note impliedly states that Plaintiff did receive a wheelchair, because he "only needed wheelchair because he was c/o leg pain." Nonetheless, this specific allegation likewise is only

directed at the unknown nurse who has never been named in this suit.  It is unclear from the record and from the nurse's note when the request for a wheelchair occurred; presumably it occurred before the nurse received the directive from Dr. Huffman not to move Plaintiff again.

Finally, and notably, this page of medical records also includes nurses' notes from the next two days, showing that on August 11, 2016, Plaintiff was brought to medical for medical to have blood drawn for what appears to be routine lab tests [see ECF 20-2], and on August 12, 2016, a nurse made a note about Plaintiff's clear liquid diet.  Id.  Neither note makes any mention of Plaintiff being injured or reporting pain. Presumably, if Plaintiff had been so severely injured on August 10, 2016 that he sustained a debilitating, disabling, permanent hip injury, he would have still been uncomfortable enough from it to mention it to medical staff, one and two days after it occurred.

Finally, when the second page of medical record (x-ray reports of films of Plaintiff's lumbar spine and pelvis, taken on August 10, 2016) is reviewed, although the x-ray reports of do not say what time the films were actually taken, they do show that they were electronically signed by the reviewing physician at 3:09:28 and 3:09 ET respectively [see ECF No. 20-3], which is consistent with the nurse's note and reasonably consistent with Plaintiff's own somewhat contradictory allegations that he had to wait, either "in a[n] interview room for 2 hours [with] no bathroom [and] no drink and was made to stand or sit on plastic chair with hurt hip and back" before he was seen by the doctor [see ECF No. 1 at 8], or "in a small rom on a gurney for approximately 1.5 hours before the Doctor came to see him." ECF No. 28 at 4. Further, while Plaintiff's complaint alleged no injury at all, only the *potential for* injury, once this was pointed out to him in Huffman's dispositive motion, his later pleadings contend that he sustained a "permanent hip injury that is debilitating and disabling." See ECF No. 28 at 1.  However, it seems unlikely that if a hip injury is what Plaintiff sustained, he would have reported the same on the day of injury, and x-rays would have been taken of that area, as well.  Instead, the only x-rays that were done were of his lumbar spine and pelvis, both of which were found to be normal.

Nonetheless, all discrepancies in the records as compared to Plaintiff's pleadings aside, Plaintiff admits that he was picked up after the fall, taken to medical, seen by a nurse and a doctor, and had x-rays taken.

Plaintiff's limited records do not support his claim that he had a serious injury or was deprived of a sufficiently serious basic human need, let alone that any Defendant Huffman or any other prison official subjectively acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. at 298. Further, his allegations do not support a claim that Huffman violated his Eighth Amendment rights by being deliberately indifferent to any serious medical condition. At best, it would appear that Plaintiff may disagree with care that was provided to him, and/or believe that additional care was required. However, a mere disagreement between an inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d at 849. Furthermore, so long as the medical treatment given is adequate, the fact that an inmate would have preferred a different type of care does not constitute deliberate indifference. Chance v. Armstrong, 143 F.3d 698, 703 (2nd Cir. 1998). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. Weller v. Dept. of Social Services, 901 F.2d 387 (4th Cir. 1990). Therefore, after a careful review of the record, the undersigned finds that Plaintiff has failed to state a deliberate indifference claim Dr. Huffman. Accordingly, it appears that no genuine issue of material fact exists with regard to these claims and that summary judgment on the same should be granted for Huffman.

## E. Medical Negligence

In his complaint, Plaintiff states that he fell on the stairs at NCRJ on August 10, 2016, during which Plaintiff hit his head in the fall and lost consciousness for "30 or more seconds," Huffman should have followed the "rule book for inmates [that] states any head tra[u]ma that could be . . . a

blood clot" should be "sent out to the nearest medical facility to be examined by trained staff." ECF No. 1 at 9. Further, Plaintiff alleges that he was "made to get up and move and walk" (presumably by Dr. Huffman) before any x-rays had been taken of his neck, back, hip, or legs, to make sure nothing was broke or no spinal injury had occurred. Id.

To the extent that Plaintiff may be seeking to establish a medical negligence claim, he must comply with West Virginia law and establish that:

(a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3.

When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code § 55-7B-6. This section provides in pertinent part:

§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions.

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's

qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the Rules of Civil Procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp. 2d 805, 806-807 (N.D. W.Va. 2004).

With regard to the appropriate standard of care, Plaintiff has not sustained his burden of proof. Plaintiff does not assert, much less establish, the standard of care for his alleged hip injury. Further, this is not a case of alleged malpractice so obvious that it entitles Plaintiff to the common knowledge exception of W.Va. Code § 55-7B-6(c). Thus, any possible claims as to medical negligence must be dismissed.

## F. John and Jane Doe Defendants "Nurse Staff" and "Correctional Officers Staff"

As Plaintiff has been previously advised, a plaintiff may name "John Doe" as a defendant when the identity of a defendant is unknown. Boyd v. Gullet, 64 F.R.D. 169 (D. Md. 1974). However, a district court is not required "to wait indefinitely" for the plaintiff to provide the defendant's true identity to the Court. Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980).

Plaintiff initiated this action on November 21, 2016. On March 2, 2017, summonses were issued for the other named defendants; Plaintiff was directed to provide identifying information for defendants "Nurse Staff" and defendants "Correctional Officers Staff" within thirty days. On March 24, 2017, Plaintiff moved for an extension of time in which to provide identifying information for these defendants. On April 5, 2017, Plaintiff was granted a thirty-day extension of time in which to do so. See ECF No. 21. Plaintiff did not provide the information then and has made no attempt to

provide it since.  Accordingly, service could not be effectuated on defendants "Nurse Staff" and "Correctional Officer Staff."

It has been nearly fourteen months since plaintiff filed his complaint. Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 90 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); see also, Bush v. City of Zeeland, 74 Fed. Appx. 581, 2003 WL 22097837 at *2 (6th Cir. 2003)(citations omitted).

Here, Plaintiff was originally notified by Order of this Court, almost three and a half months after filing his complaint, that he had an additional thirty days in which to identify these "John/Jane Doe" defendants; later, he was granted a further thirty days. Nonetheless, he failed to do so.  He has had more than sufficient time to provide correct information in order to effectuate service on defendants "Nurse Staff" and "Correctional Officer Staff" in this action. Noting Plaintiff's lack of diligence in doing so, the undersigned recommends that the Plaintiff's claims against Defendants "Nurse Staff" and "Correctional Officer Staff" be dismissed for failure to timely effectuate service.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that Defendants NCRJ and NCRJ Administrator's Motion to Dismiss, [ECF No. 18] be **GRANTED**, and the Complaint as it relates to them be **DISMISSED with prejudice**.  In addition, the undersigned recommends that Defendant Huffman's Motion to Dismiss and Alternative Motion for Summary Judgment [ECF No. 20] be **GRANTED** and the Complaint as to Defendant Huffman be **DISMISSED with prejudice.**

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

DATED: January 22, 2018

/s/ *Michael J. Aloi*
MICHAEL J. ALOI
UNITED STATES MAGISTRATE JUDGE

28